UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES L. KENNEDY,          )
)
      Plaintiff.       )
)
vs.                      )     No. 4:07 CV 1737 CDP
)
MICHAEL J. ASTRUE,      )
Commissioner of Social Security,  )
)
      Defendant.     )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the

Commissioner's final decision denying Plaintiff James L. Kennedy's application

for supplemental security income benefits under Title XVI of the Act, 42 U.S.C.

§§ 1381 et seq. Kennedy claims that he is disabled because of short gut syndrome

and pain in his legs and back. The Administrative Law Judge, however, found

that Kennedy was not disabled. Because I find that the ALJ failed to give proper

weight to the opinions of the expert witness and the treating physicians, I conclude

that the decision denying benefits was not supported by substantial evidence in

one respect, I will remand the decision.

### Procedural History

On February 12, 2004, James L. Kennedy filed an application for

supplemental security income benefits, alleging that his disability began on January 10, 2002. The application was initially denied on April 21, 2004. Kennedy requested a hearing, which was held on September 17, 2005 before Administrative Law Judge Seiler. A partially-favorable decision was rendered on September 21, 2005, granting Kennedy benefits beginning on December 6, 2003 rather than the requested date of January 10, 2002.

On November 18, 2005, the Appeals Council of the Social Security Administration vacated the hearing decision and remanded the case with directions to obtain more evidence on Kennedy's impairments, consider the opinions of his treating physicians, further consider his residual functional capacity, and obtain evidence from a medical expert and potentially a vocational expert. On remand, Administrative Law Judge James B. Griffith conducted a hearing on April 18, 2006 and September 5, 2006. On November 7, 2006, ALJ Griffith rendered a decision, denying Kennedy's claim for disability benefits.

Kennedy requested a review of the decision and was denied this request by the Appeals Council on August 17, 2007. The ALJ's determination thus stands as the final determination of the Commissioner. Kennedy filed this appeal on October 12, 2007.

**Evidence Before the Administrative Law Judge**

James L. Kennedy was born on December 6, 1953 and was 52 years old at the time of the second hearing. Kennedy graduated from high school in 1972 and completed some college courses in the early 1990s. His work history includes mostly carpentry work and some experience in concrete form work and millwright work.

Kennedy last worked as a carpenter in December 2001. He testified that he stopped working because most construction projects stopped after September 11, 2001. During this period of unemployment, Kennedy was shot in the stomach. He testified that he has been unable to work since the shooting because of digestion problems and back and leg pain, both of which were caused by the gun shot.

Kennedy has five to seven bowel movements daily, with chronic diarrhea. He believes that an employer will not hire him because he spends most of his time either in the bathroom or eating small meals. He takes Loparamide to control his diarrhea but has digestion problems despite the medication. Kennedy also testified that he is conscious of what he eats and avoids greasy foods. However, he admits that he cannot pinpoint specifically what types of food cause his digestion problems because it comes and goes randomly.

Kennedy also claims that his back pain prevents him from working. He testified that he is unable to lift more than twenty pounds and that he cannot bend over without experiencing pain. The pain radiates from his lower back down to his legs. At the time of the hearing, Kennedy claimed that his left leg hurt all the time while his right leg had just started to bother him. Kennedy testified that the severity and duration of the pain varies day by day, depending on how active he was the previous day and whether he is taking medication. Riding or driving in a car, sitting, or standing for long periods of time increases the pain. He claims that he can sit or stand for only thirty minutes before the pain becomes so severe that he has to move.

Kennedy testified that an injury to his left ankle has worsened since his back and leg pain began. He has sharp pain in the ankle about twice a week that lasts anywhere from an hour to half a day. He also struggles with washing or brushing his hair and putting on his shoes. Kennedy testified that he does not contribute to household chores very much because of the back pain. He cannot carry a laundry basket and usually does not go grocery shopping by himself.

Additionally, Kennedy testified that once or twice a week he runs out of energy during the day and is unable to complete routine tasks. He also has problems sleeping through the night. Kennedy testified that he will wake up every

three hours either to go to the bathroom or because of the back pain. He rarely feels refreshed and, therefore, takes an hour-long nap each afternoon.

Kennedy has been prescribed medication for his back pain. However, he does not always take it because he does not have insurance and has to borrow money to pay for it. When he is not taking the prescribed medication for his back, he takes aspirin instead. Even with the prescribed medication, Kennedy testified that he still feels pain in his back and legs.

In addition to taking medications, Kennedy attends physical therapy. At the time of the hearing, he had attended four or five hour-long sessions. However, Kennedy testified that he was unsure whether or not he will continue physical therapy because he cannot afford it.

On a typical day, Kennedy testified that he spends about six hours reading. He spends the remaining part of the day preparing food, cleaning the dishes, and taking a nap. He leaves the house about twice a week to go shopping or to go to the doctor. He testified that he occasionally visits relatives but usually has someone else drive.

### Medical Records

In January 1984, Kennedy was injured in a car accident. He suffered bilateral mandibular fractures and a tri-malleolar fracture to his left ankle.

Kennedy had surgery on his ankle to repair the break.

In January 2002, Kennedy was shot in the abdomen. He was treated at the University Medical Center in Las Vegas, Nevada. He underwent exploratory laparotomy with adhesion lysis and left hermicolectomy, rectal peritoneal exploration and drainage, and placement of a JP drain. The gunshot entered on the left side of his abdomen, traveled through the left side of his colon, and went through the lateral aspect of the left side of his thoracic and lumbar spine.

After Kennedy was discharged from the hospital, he was taken into custody to serve time for a felony conviction. During his incarceration, Kennedy received extra snacks each day because he had difficulty absorbing nutrients. Two months after being shot, he was restricted as follows: no prolonged standing, no lifting more than 20 pounds, no high places or use of ladders, and no use of chainsaws or other sharp objects.

In May 2002, Kennedy had a mole removed from his back. A biopsy showed that the mole was a malignant melanoma. Kennedy was released from prison in January 2004.

On April 7, 2004, Anthony J. Keele, M.D. completed an consultative examination of Kennedy. In Dr. Keele's report, he stated that Kennedy denied "any chest pain, shortness of breath, nausea, vomiting, diarrhea, or dizziness."

Functionally, Dr. Keele found that Kennedy had a normal range of motion and normal gait. Dr. Keele opined that he can sit for 6-8 hours, stand for 3-4 hours, walk for 2 miles, and lift and carry 50 pounds. In summary, Dr. Keele noted that "there are no findings to indicate any limitation of function."

Seth Goldberg, M.D. treated Kennedy at Barnes Jewish Hospital during 2004-2005. On August 11, 2005, Dr. Goldberg completed a physical residual functional capacity questionnaire. In this questionnaire, he noted that Kennedy had been shot, had short gut syndrome, and had chronic back and leg pain. Dr. Goldberg's objective findings found no point tenderness, no focal weakness, and no sensory changes, but an MRI showed an L-spine deformity with lower disc bulging. In his assessment, Dr. Goldberg opined that Kennedy can tolerate moderate stress but can only walk one city block, sit for 20 minutes at a time, and stand for 15 minutes at a time. In a day, Dr. Goldberg reported that Kennedy can sit for a total of four hours and stand for a total of two hours. He may need to take one or two breaks per hour. Additionally, Dr. Goldberg found that Kennedy can never lift more than 10 pounds and may only lift that amount rarely.

On August 26, 2005, the Barnes Jewish Hospital neurosurgery clinic examined Kennedy. His motor skills were recorded as 5/5, and no sensory defects were found. An MRI of the L-spine showed degenerative joint disease, small

bulging discs, and an open spinal canal. Kennedy was not a candidate for surgery but was advised to continue pain management.

At the suggestion of Dr. Goldberg, Kennedy attended physical therapy sessions at Lake Regional Health System between March 28, 2006 and May 23, 2006. During his initial evaluation, physical therapist Courtney Hulett observed abnormalities in Kennedy's gait. She also noted moderately decreased trunk rotation to the left, maximally decreased motion when extending, and minimally decreased trunk rotation to the right and side. For the first treatment, Kennedy did bilateral supine active hamstring stretches. However, this treatment was concluded because of Kennedy's "subjective complaints."

On June 13, 2006, Theodore Koreckij, M.D. completed a consultative orthopedic examination of Kennedy. Dr. Koreckji noted that Kennedy walked without assistive devices but had a slight limp. He sat comfortably and could stand when asked. He had significantly increased thoracic kyphosis, limited thoracolumbar flexion, and poor lumbar reversal. Kennedy reported subjective pain in his lower back. He could bend laterally in either direction for 10-15 degrees with no muscle spasms. He had difficulty walking on his heels and walking on his toes. When asked to move his right shoulder, Kennedy reported subjective pain. He could move his elbow, wrists, and fingers without problem,

and his hands were calloused.  He also had intact grip strength in both hands.

Kennedy's legs did not have muscle atrophy, and his reflexes were present.

Movement of his left ankle was limited.  When sitting straight, Kennedy could

raise his legs 90 degrees.  While laying down, he reported subjective discomfort in

the lower back and was able to raise his legs 60 degrees.  An MRI from November

12, 2004 showed lumbar disc bulges and a small disc herniation.  In conclusion,

Dr. Koreckij opined that Kennedy "would be capable of light manual labor or

sedentary activities."  His work limitations are based largely on "subjective

symptomatology."

### Legal Standard

A court's role on review is to determine whether the Commissioner's

findings are supported by substantial evidence on the record as a whole.  Gowell

v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).  Substantial evidence is less than a

preponderance but is enough so that a reasonable mind would find it adequate to

support the ALJ's conclusion.  Prosch v. Apfel, 201 F. 3d 1010, 1012 (8th Cir.

2000).  As long as there is substantial evidence on the record as a whole to support

the Commissioner's decision, a court may not reverse it because substantial

evidence exists in the record that would have supported a contrary outcome, id., or

because the court would have decided the case differently.  Browning v. Sullivan,

958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." <u>Singh v. Apfel</u>, 222 F.3d 448, 451 (8th Cir. 2000) (quoting <u>Warburton v. Apfel</u>, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1)    the credibility findings made by the Administrative Law Judge;

(2)    the education, background, work history, and age of the claimant;

(3)    the medical evidence from treating and consulting physicians;

(4)    the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5)    any corroboration by third parties of the plaintiff's impairments; and

(6)    the testimony of vocational experts, when required, which is based upon a proper hypothetical question.

<u>Brand v. Secretary of Dep't of Health, Educ. & Welfare</u>, 623 F2d. 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i)(1); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, then the Commissioner reviews whether the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

At this stage, if a claimant suffers from an exertional impairment, the Commissioner's burden is satisfied by referring to the Medical-Vocational Guidelines ("the Grid") of 20 C.F.R., Part 404, Subpart P, Appendix 2. However, if a claimant suffers from a nonexertional impairment as well, reliance upon the Grid is only permissible if "the ALJ finds, and the record supports the finding, that the nonexertional impairment does not significantly diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." Harris v. Shalala, 45 F.3d 1190, 1194 (8th Cir. 1995) (citing Thompson v. Bowen, 850 F.2d 346, 349-50 (8th Cir. 1988)). Absent such a finding, evidence from a vocational expert or other similar evidence must be obtained establishing whether "there are jobs available in the national economy for a person with the claimant's characteristics." Id. (citing Thompson, 850 F.2d at 349).

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is

uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d

1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's

subjective complaints when they are inconsistent with the record as a whole. See

e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the

subjective complaints, the ALJ is required to consider the factors set out by

Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating
> and examining physicians relating to such matters as: (1) the objective
> medical evidence; (2) the subjective evidence of the duration, frequency,
> and intensity of plaintiff's pain; (3) any precipitating or aggravating factors;
> (4) the claimant's daily activities; (5) the dosage, effectiveness and side
> effects of any medication; and (6) the claimants' functional restrictions.

Id. at 1322.

A treating physician's opinion should not ordinarily be disregarded and is

entitled to substantial weight. Singh, 222 F.3d at 451. A treating physician's

opinion concerning a claimant's impairment will be granted controlling weight, if

the opinion is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in

the record. Id. While a treating physician's opinion is usually entitled to great

weight, the Eighth Circuit has cautioned that it does not "automatically control,

since the record must be evaluated as a whole." Prosch v. Apfel, 201 F.3d at 1013.

The Eighth Circuit has upheld an ALJ's decision to discount or disregard the opinion of a treating physician in situations where other medical assessments "are supported by better or more thorough medical evidence" or where a treating physician gives inconsistent opinions that undermine the credibility of the opinions. Id. (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)). In any event, whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations require the ALJ to "always give good reasons" for the particular weight the ALJ chooses to give the opinion. Singh, 222 F.3d at 452; Prosch, 201 F.3d at 1013; 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2).

The Eighth Circuit has consistently held that the ALJ has the "duty to develop the record fully and fairly," even where the claimant is represented by counsel. Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000); Dozier v. Heckler, 754 F.2d 274, 276 (8th Cir. 1985); Vaughn v. Heckler, 741 F.2d 177, 179 (8th Cir. 1984). This includes the duty to develop the record as to the medical opinion of the claimant's treating physician. See, e.g., Brown v. Bowen, 827 F.2d 311, 312 (8th Cir. 1987); Brissette v. Heckler, 730 F.2d 548, 549-50 (8th Cir. 1984); Thorne v. Califano, 607 F.2d 218, 219-20 (8th Cir. 1979). The Eighth Circuit has held that if a treating physician "has not issued an opinion which can be adequately related to the [Social Security Act's] disability standard, the ALJ is obligated ... to

address a precise inquiry to the physician so as to clarify the record." <u>Lewis v.</u> <u>Schweiker</u>, 720 F.2d 487, 489 (8th Cir. 1983). If the physician's reports of the claimant's limitations are stated only generally, the ALJ should ask the physician to clarify and explain. <u>See</u> <u>Vaughn</u>, 741 F.2d at 179.

However, an ALJ is only required to re-contact a treating physician "if the available evidence does not provide an adequate basis for determining the merits of the disability claim." <u>Sultan v. Barnhart</u>, 368 F.3d 857, 863 (8th Cir. 2004) (citing 20 C.F.R. § 416.912(e), 20 C.F.R § 416.919a(b)). Thus, unless a crucial issue is undeveloped," the ALJ is not required to seek additional clarification from a treating physician. <u>Goff v. Barnhart</u>, 421 F.3d 785, 791 (8th Cir. 2005) (quoting <u>Stormo v. Barnhart</u>, 377 F.3d 801, 806 (8th Cir. 2004)).

### The ALJ's Findings

The ALJ found that Kennedy was not disabled under section 1614(a)(3)(A) of the Social Security Act. (Tr. 19). He issued the following findings:

1. The claimant has not engaged in substantial gainful activity since January 10, 2002, the alleged onset date (20 C.F.R. § 416.920(b) and § 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative joint disease of his cervical spine with thoracic kyphosis, left ankle status post tri-malleolar fracture and right should status post dislocations, and the residuals of an abdominal gunshot wound with lumbar spine trauma, and lumbar degenerative disc disease with left

leg radiculopathy (20 C.F.R. § 416.920(c)).

3.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), § 416.925, and § 416.926).

4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and carry as much as 50 pounds occasionally and 25 pounds frequently, he can sit without limitation and can stand and/or walk about 6 hours in an 8-hour workday, and he can occasionally crouch, crawl, and stoop.

5.     The claimant is unable to perform any of his past relevant work (20 C.F.R. § 416.965).

6.     The claimant was born on December 6, 1953 and is 52 years old, which is defined as an individual closely approaching advanced age (20 C.F.R. § 416.964).

7.     The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).

8.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. § 416.960(c) and § 416.966).

10.    The claimant has not been under a "disability," as defined in the Social Security Act, since February 12, 2004 (20 C.F.R. § 416.920(g)), the date the application was filed.

Additionally, the ALJ found Kennedy's allegations of pain not credible. The ALJ noted that Kennedy's work history, inconsistent complaints of pain, and failure to seek other pain reduction methods reflected negatively on his credibility. (Tr. 17-18).

## Discussion

Kennedy argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to obtain the testimony of a vocational expert. Kennedy also claims that the ALJ's decision is not supported by substantial evidence because the ALJ did not consider all of the evidence, specifically a finding by the Missouri Department of Social Services that Kennedy is disabled. Finally, Kennedy argues that the decision is not supported by substantial evidence because the ALJ did not properly consider treating and non-examining physicians' opinions.

Kennedy first claims that the ALJ erred because he failed to obtain testimony from a vocational expert. More specifically, Kennedy claims that the Commissioner failed to meet his burden of proving that there are other jobs in the national economy that Kennedy could perform with his current physical limitations. As discussed above, when the claimant's limitations are exertional, the Commissioner can meet this burden by referring to the Medical-Vocational

Guidelines (the Grids).  However, if the claimant suffers from any nonexertional impairments, the Commissioner might have to obtain testimony from a vocational expert to meet his burden.

Kennedy's limitations are both exertional and nonexertional.  Exertional impairments limit a claimant's ability to meet the strength demands of a job, specifically his ability to sit, stand, walk, lift, carry, push, or pull.   Robinson v. Cline, 956 F.2d 836, 841 (8th Cir. 1992) (citing SSR 83-14 at 5-6).  The record as a whole indicates that Kennedy has exertional limitations that affect his ability to lift, carry, stand, and walk.  Nonexertional impairments are those that cause other physical limitations not enumerated above and restrict the claimant's ability to meet the nonstrength demands of a job.  SSR 96-4.  Kennedy's nonexertional impairments affect his ability to crouch, crawl, and stoop.

Because Kennedy has both exertional and nonexertional impairments, the Commissioner might need the testimony of a vocational expert to establish that there are other jobs in the national economy that Kennedy could perform.  However, a Commissioner can rely on the Grids even though the claimant has nonexertional impairments if the ALJ finds that the nonexertional impairments do not significantly diminish the claimant's residual functional capacity (RFC).  Harris v. Shalala, 45 F.3d at 1194.  Here, the ALJ did not make this finding.

Since the ALJ did not make a finding that Kennedy's nonexertional impairments do not significantly diminish his RFC, it seems that the testimony of a vocational expert is required, but since Kennedy's nonexertional impairments are based on his subjective complaints of pain, the ALJ can still disbelieve Kennedy's complaints if they are inconsistent with the record as whole. See e.g., Battles v. Sullivan, 902 F.2d at 660. If the ALJ discredits Kennedy's subjective complaints of pain, then only exertional impairments remain and reliance on the Grids is permissible. Reynolds v. Chater, 82 F.3d 254, 258-59 (8th Cir. 1996).

When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination using the factors set forth in Polaski. Baker v. Apfel, 159 F.3d 1140, 1144 (8th Cir. 1998); Cline v. Sullivan, 39 F.2d 560, 565 (8th Cir. 1991). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered the relevant evidence. Jeffery v. Secretary of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988); Butler v. Secretary of Health and Human Servs., 850 F.2d 425, 429 (8th Cir. 1988).

The ALJ properly followed the Polaski requirements and provided express credibility determinations to explain the reasons for discrediting Kennedy's subjective complaints. First, the ALJ discussed Kennedy's work history. He

noted that Kennedy's "fairly low earnings and significant breaks in employment . . . cast doubt on his credibility." Furthermore, the ALJ found that the fact that Kennedy had not attempted to work in carpentry or a less strenuous field since his injuries indicated a "lack of motivation to work rather than a lack of ability to work." This is an adequate basis from which to discount Kennedy's subjective complaints. See, e.g., Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008) (partially relying on the claimant's "sporadic work history" in making an adverse credibility finding); Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (noting that Gonzales' "erratic work history" is relevant to his credibility).

Second, the ALJ noted that Kennedy's subjective complaints were sometimes inconsistent. In leg raise tests, Kennedy was able to raise his legs 90 degrees when sitting but only 60 degrees when lying down. The ALJ explained that since the same muscle groups are used in both tests, the differences reflect negatively on Kennedy's credibility. Additionally, the ALJ noted that Kennedy inconsistently reported pain radiating from his back down to his legs. Again, the ALJ's explanation was adequate in discrediting Kennedy's credibility. See, e.g., Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (relying on inconsistent reports of improvement and increased difficulty in a matter of days and varied explanations to doctors on the frequency with which she used a cane to walk to

discredit the claimant's subjective complaints); <u>Gonzales v. Barnhart</u>, 465 F.3d at 891-92, 894-95 (noting that the claimant was malingering and therefore, lacked credibility when he had a normal gait and moved freely at one appointment, would limp while in the exam room but walk normally outside of it at another appointment, and could move easily when distracted but would grimace when focusing).

Third, the ALJ discussed Kennedy's medication and pursuance of medical treatment. He questioned why Kennedy did not use other means of pain relief besides Tylenol with codeine, Hydrocodone, and Tramadol: "[h]e does not apply heat or ice to his back or left ankle, he does not appear to use a recliner or similar type of chair to take weight off his legs and back or use a straight back chair, or need to sleep on a hard mattress or flat surface." In addition, Kennedy reported relief when heat was used on his back during physical therapy but has not since used heat for pain relief. Recognition of failure to pursue additional medical treatment is a sufficient basis for discrediting Kennedy's credibility. <u>See</u>, <u>e.g.</u>, <u>Gonzales v. Barnhart</u>, 465 F.3d at 895 (partially relying on the fact that the claimant "did not pursue alternative treatments to alleviate back pain" in discrediting the claimant's subjective complaints); <u>Selby v. Astrue</u>, No. C06-3057-MWB, 2008 U.S. Dist. LEXIS 1817 at *51 (N.D. Iowa Jan. 10, 2008) (finding that

the claimant lacked credibility in part because she "declined treatment options that had provided her relief in the past").

Finally, the ALJ considered Kennedy's daily activities. Kennedy testified that he spends most of each day reading and taking care of his personal needs. However, the ALJ noted that Kennedy also moved residences frequently. At the time of the hearing, Kennedy lived with his mother, but he testified that he often moved to live with other relatives or friends. This reason for discrediting Kennedy's subjective complaints is questionable. The Eighth Circuit has held that ability to perform certain acts occasionally does not mean that the claimant lacks a disability. See Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005). Rather, the claimant must be able to perform the duties of a job each day and under the pressure of a competitive environment. Id. The claimant must be able to sustain the activities over a period of time. Leckenby v. Astrue, 487 F.3d 636, 634 (8th Cir. 2007). Therefore, even though Kennedy moves frequently and each move may require the actions that Kennedy claims he cannot perform, it is unlikely that he moves residences every day and with the pressure of a competitive work environment. Additionally, the ALJ fails to explicitly explain why he thinks the fact that Kennedy moves a lot weakens his credibility. Despite the failures of this credibility finding, the overall credibility decision is not affected. As discussed

above, there are several other inconsistencies identified that support the ALJ's conclusion. See, e.g., Cox v. Barnhart, 471 F.3d 902, 908 (8th Cir. 2006) (explaining that though one reason for a negative credibility determination may have been improper, the overall determination is not flawed if several other inconsistencies are identified).

While the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence, the ALJ may disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See, e.g., Battles v. Sullivan, 902 F.2d at 660; Outsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989). This is what the ALJ did in the present case. Credibility determinations, when adequately explained and supported, are for the ALJ to make. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Because the ALJ gave his reasons for discrediting Kennedy's claim, which were supported by the record, I will defer to his judgment. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001). Because the ALJ properly discredited Kennedy's subjective complaints, only exertional impairments remain, and reliance on the Grids was permissible. Testimony by a vocational expert was not necessary.

Kennedy's second argument is that the ALJ's decision was not supported by substantial evidence because he failed to consider a decision by the Missouri

Department of Social Services (DSS), which found that Kennedy was disabled and awarded him medical assistance benefits for one year or longer.

The Code of Federal Regulations, 20 C.F.R. § 404.1504, states that a "determination made by another agency that [the claimant is] disabled . . . is not binding on [the ALJ]." However, the Eighth Circuit has held that a disability finding by another agency deserves some weight and in some cases is "important enough to deserve explicit attention." Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998) (explaining that a "finding of permanent and total disability by another government agency . . . which occupies some thirty pages in the record, merits more than simply an implicit rejection").

In the present case, the decision of the Missouri Department of Social Services is not "important enough to deserve explicit attention." The DSS decision did not provide any additional evidence that would have a significant impact on the ALJ's determinations. See, e.g., Marsh v. Apfel, 23 F. Supp. 2d 1075, 1079 (8th Cir. 1998) (holding that "the Court cannot find that the ALJ erred in failing to properly consider the VA findings because the Court does not find that the evidence would necessarily have had a significant impact upon the ALJ's determinations"). The agency decision was only six pages and did not contain any additional medical evidence. C.f. Morrison v. Apfel, 146 F.3d at 628 (where the

agency's record consisted of 30 pages and the results of an extensive physical examination) and Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006) (where the agency's decision was based on a letter describing the VA's decision, outpatient treatment reports, and an examination). Additionally, the state finding of disability is partly based on a finding of emphysema, which is a condition that was not plead here. (Tr. 100).

The decision by DSS is a piece of evidence that the ALJ should consider, but the fact that the ALJ did not mention the decision in his opinion does not mean that he did not consider it. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (explaining that an ALJ's failure to cite to specific evidence does not mean that this evidence was not considered) and Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995) (stating that failing to mention another agency decision does not indicate that this decision was not considered). The ALJ's failure to explicitly discuss the disability decision by the Missouri Department of Social Services does not mean his decision is unsupported by substantial evidence on the record.

Finally, Kennedy argues that the ALJ's decision was not supported by substantial evidence on the record because the ALJ did not explain the weight he gave to the opinions of Kennedy's non-examining and treating physicians. In his decision, the ALJ discounted the opinions of the non-examining medical expert,

Dr. White, because he "would not provide an opinion based upon the information at hand." In addressing the opinion of the treating physician, the ALJ did not explicitly describe the weight he gave to Dr. Goldberg. Rather, he explained that the "significant functional limitations" described by Dr. Goldberg "must have been attributed to the claimant's <u>subjective</u> reports of pain because the <u>objective</u> findings were not consistent with the limitations described." In reference to the consulting physicians, the ALJ noted that Dr. Koreckij's opinions' were "the most compelling."

I agree with the plaintiff that the ALJ did not give proper weight to the medical expert, Dr. White. The ALJ explained that "[t]he opinions given by the medical expert are discounted because the medical expert would not provide an opinion based upon the information at hand, including what the claimant's limitations would have been when the information that the medical expert said was out of date was in fact current." This statement is not supported by the record, when Dr. White's testimony is reviewed in its entirety.

The testimony of a medical expert or non-examining physician is generally given less weight than examining sources. <u>Wilcockson v. Astrue</u>, No. 07-3757, 2002 U.S. App. LEXIS 18505, at *4-5 (8th Cir. Aug. 28. 2008). Furthermore, their reports "deserve little weight in the overall evaluation of disability, especially

in light of evidence to the contrary." <u>Davis v. Schweiker</u>, 671 F.2d 1187, 1189 (8th Cir. 1982). Here, Dr. White testified that he would not send Kennedy back to work without further evaluation and a more recent MRI. When Dr. White attempted to explain this statement the ALJ cut him off. Additionally, when plaintiff's counsel asked Dr. White to review Dr. Goldberg's RFC (which Dr. White indicated he wished to do), the ALJ stopped him, stating he did not need the doctor to repeat the evidence to him. In sum, the ALJ's statement that Dr. White would not give an opinion is not supported by the transcript. This is especially significant because it appears that Dr. White was attempting to give an opinion that was somewhere between the conflicting opinions of the other doctors. He also appeared to recommend further tests, but the ALJ did not give him a chance to explain exactly what he believed was needed.

I also agree with the plaintiff that the ALJ failed to give proper weight to Kennedy's treating physician, Dr. Goldberg. Usually, the medical records of a claimant's treating physician will be given greater weight than the opinion of a consulting physician. <u>Chamberlain v. Shalala</u>, 47 F.3d 1489, 1494 (8th Cir. 1995). However, this is not always the case. The ALJ can discount a treating physician's opinion if (1) "other medical assessments are supported by better or more thorough medical evidence," or (2) the "treating physician renders inconsistent

opinions that undermine the credibility of such opinions." Wagner v. Astrue, 499 F.3d 842, 849 (8th Cir. 2007). If an ALJ decides to discount a treating physician's opinion, he must give good reasons for doing so. Prosch v. Apfel, 201 F.3d at 1013.

Here, Dr. Goldberg completed an RFC form in which he made several conclusory statements about Kennedy's functional limitations that, if believed, would render Kennedy disabled. Presumably, the ALJ attempted to show that Dr. Goldberg's conclusions were not supported by objective reasoning and were inconsistent and therefore, should not be given controlling weight. The ALJ noted that in Dr. Goldberg's objective findings he found "no point tenderness . . . . [n]o focal weakness or sensory changes." However, the ALJ failed to mention that in addition to these findings, Dr. Goldberg also noted that an MRI showed an L-spine deformity and disc bulging. The ALJ stated that the functional limitations described by Dr. Goldberg "must have been attributed to the claimant's subjective reports of pain because the objective findings were not consistent with the limitations described." However, the ALJ did not describe how the objective findings were inconsistent with Kennedy's alleged limitations. Furthermore, the ALJ did not note any inconsistency in Dr. Goldberg's records nor did he explain the additional objective evidence or support that the consulting physicians relied

on that Dr. Goldberg did not. The ALJ's explanation does not provide sufficient

reasons for discounting Dr. Goldberg's opinions. <u>See</u>, <u>e.g.</u>, <u>Prosch v. Apfel</u>, 201

F.3d at 1013 (where the court held that the ALJ gave sufficient reasons for

discounting the treating physician's evaluation when the ALJ noted that the

physician's opinion on disability was different than the one he gave three weeks

earlier and his conclusions were inconsistent with three other physicians) and

<u>Reed v. Barnhart</u>, 399 F.3d at 921 (where the court held that the ALJ did not give

sufficient reasons for discounting the treating physician's evaluation when the

ALJ stated that there were inconsistencies in the physician's record when in fact

there were not and that his opinions lacked the support of objective testing when it

was unclear what other tests should have been completed).

Because the ALJ failed to consider the expert's opinion fully and failed to

explain adequately why he gave less weight to the opinion of the treating

physician, the decision is not supported by substantial evidence on the record as a

whole. I will therefore reverse the decision and remand the case to the

Commissioner for further proceedings consistent with this opinion.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

reversed and the case is remanded for the reasons stated herein.

A separate judgment in accord with this Memorandum and Order is entered this date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 5th day of February, 2009.